IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:16-CV-00044-D

**Scott Coleman Wright,**

                Plaintiff,

v.

**Nancy Berryhill,** Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Recommendation**

      Plaintiff Scott Coleman Wright instituted this action on April 14, 2016, to challenge the denial of his application for social security income. Wright claims that Administrative Law Judge Richard E. Perlowski erred in his determination by failing to find that Wright's mental impairments met or equaled a Listing impairment. He also contends that ALJ Perlowski erred in finding that he has the residual functional capacity ("RFC") to perform a reduced range of medium work. Both Wright and Defendant Nancy A. Berryhill,[1] the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 18, 21.

      After reviewing the parties' arguments, the court has determined that ALJ Perlowski reached the appropriate decision. Substantial evidence supports ALJ Perlowski's finding that Wright's metal impairments did not meet or equal Listing 12.04 (affective disorders). Additionally, the evidence of record does not establish that Wright has greater restrictions than those set forth in the RFC determination Therefore, the undersigned magistrate judge

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

recommends that the court deny Wright's motion, grant the Commissioner's motion, and affirm ALJ Perlowski's decision.[2]

I. **Background**

On September 18, 2012, Wright filed an application for supplemental security income. In his application, he alleged a disability that began on January 11, 1992. After his claim was denied at the initial level and upon reconsideration, Wright appeared before ALJ Perlowski for a hearing to determine whether he was entitled to benefits. ALJ Perlowski determined that Wright was not entitled to benefits because he was not disabled. Tr. at 13–25.

ALJ Perlowski found that Wright had the following severe impairments: lumbar degenerative disc disease, chronic joint pain, obesity, schizoaffective disorder, post-traumatic stress disorder ("PTSD"), and substance abuse. *Id.* at 15. ALJ Perlowski found that Wright's impairments, either alone or in combination, did not meet or equal a Listing impairment. *Id.* at 16. ALJ Perlowski then determined that Wright had the RFC to perform a medium work, with additional limitations. *Id.* at 20. He can frequently engage in postural activities. *Id.* He can frequently engage in overhead reaching with the left upper extremity. *Id.* Wright is limited to performing simple, routine, repetitive tasks. *Id.* He should avoid production work or similar fast-paced jobs with deadlines and quotas. *Id.* Finally, Wright can only occasionally interact with coworkers, supervisors, or the general public. *Id.*

ALJ Perlowski concluded that Wright had no past relevant work. *Id.* at 24. However, considering his age, education, work experience, and RFC, ALJ Perlowski found that there were other jobs that existed in significant numbers in the national economy that Wright was capable of

---

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b). D.E. 16.

performing. *Id*. at 24–25. These include: store laborer, laundry worker, and auto detailer. *Id*. at 25. Thus, ALJ Perlowski found that Wright was not disabled. *Id*.

After unsuccessfully seeking review by the Appeals Council, Wright commenced this action on April 14, 2016. D.E. 6.

## II.     Analysis

### A.     Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.     Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is

equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Wright has a history of physical and mental conditions. Psychiatrist Dr. Kimberly Johnson examined Wright on October 4, 2012. Tr. at 199–203. He reported anxiety, depression, and PTSD. *Id.* She diagnosed Wright with schizoaffective disorder, PTSD, and panic disorder. *Id*. He again reported symptoms of PTSD when he returned to Dr. Johnson the following month. *Id*. at 204–05.

Omobola Gold, a physicians assistant at Rocky Mount Pain and Spine, examined Wright in January 2013. *Id*. at 188–90. Wright reported pain in his shoulder, knee, and back with lower extremity radiculopathy. *Id*. He stated that he experienced numbness and tingling in his right leg, which occasionally gave out when he was walking. *Id*. Gold noted tenderness upon palpitation and pain with flexation and extension, for which Wright was prescribed medications. *Id*. A January 2013 shoulder x-ray was unremarkable, and a left knee x-ray showed only mild degenerative changes. *Id*. at 189.

Wright returned to Dr. Johnson in March with complaints of crying, sadness, sleep disruptions, and a lack of motivation. *Id*. at 222–25. She remarked that he had a sad demeanor and a blunt affect and she assigned him a Global Assessment of Functioning ("GAF") score of

65. *Id.* Dr. Johnson prescribed medications for Wright's sleep issues, panic attacks, and anxiety and depression. *Id.*

Dr. Robert Wadley at Brier Creek Integrated Pain & Spine examined Wright in May for complaints of increased pain. *Id.* at 350–53. He prescribed Percocet. *Id.* The following month, Wright returned to Dr. Johnson and stated he was still experiencing difficulties sleeping and also had passive suicidal ideations. *Id.* at 275–78. She changed his medications. *Id.* That same month, Shannon Moore, a nurse practitioner at Brier Creek, saw Wright for complaints of pain in his back, neck, shoulders, and right arm. *Id.* at 345–49. She ordered MRIs to be completed and prescribed Wright medication. *Id.*

Jevita Terry, a family nurse practitioner at FDW Family Care Center, examined Wright the following month. *Id.* at 255–58. He reported headaches as well as lower back pain radiating into his right leg and an inability to sleep. *Id.* Terry noted lumbar tenderness and scheduled Wright for imaging tests. *Id.* Terry also continued his medications. *Id.*

In September, Wright reported to Dr. Johnson that he was experiencing an inability to sleep, racing thoughts, increased agitation, poor energy, and feeling of sadness. *Id.* at 279–84. She prescribed a new medication. *Id.* Later that month, Dr. Stacey Rawls saw Wright for continued symptoms. *Id.* She advised that he follow-up in one month for medication. *Id.*

Wright continued follow-up care at Brier Creek. In October, Wright reported increased pain, and Dr. Seung Kim changed his medications. *Id.* at 320–24. He again reported continued pain to Dr. Wadley in December, for which his medications were continued. *Id.* at 292–303.

In January 2014, Dr. Maitreya Thakkar at Boice Willis Clinic examined Wright for reports of chest pain, shortness of breath, and occasional dizziness. *Id.* at 390–92. Dr. Thakkar prescribed nitroglycerin, directed Wright to take a aspirin daily and ordered an echocardiogram.

*Id.* That same month, Wright returned to Terry complaining of continued back pain, for which he was encouraged to increase his physical activity. *Id.* at 261.

In February, Wright again saw Dr. Wadley reporting increased pain that was not alleviated with medication. *Id.* at 287–91. Dr. Wadley increased his medication dosage and encouraged Wright to consider physical therapy and steroid injections. *Id.* Wright presented to RHA Health Services in May for difficulty sleeping, social withdrawal, racing thoughts, decreased interest in all activities, poor energy, crying spells, and feelings of hopelessness and helplessness. *Id.* at 264–65. Faith Davis, a licensed clinical social worker, diagnosed Wright with schizoaffective disorder, PTSD, panic disorder, and generalized anxiety disorder. *Id.* She assigned a GAF score of 40 and referred him to Dr. Karlus Artis for medication management. *Id.* Dr. Artis provided some medication refills and recommended Wright's Xanax dosage be lowered. *Id.*

Wright presented to Emergency Department several times in May and June seeking pain medications. *Id.* at 440–67. In June, Wright went to the Emergency Department of Southern Virginia Regional Medical Center following a vehicle accident. *Id.* at 383–89. He complained of back and neck pain as well as posterior chest pain. *Id.* Heath care providers prescribed Percocet. *Id.* Several days later, Wright returned to Terry for his continuing back pain. *Id.* at 262. Terry referred Wright to Dr. Divya Patel at UMA Pain & Spine for pain management. *Id.* Dr. Patel examined Wright, who reported neck pain and back pain that radiated into his right leg and right arm. *Id.* at 433–35. Dr. Patel diagnosed Wright with lumbago, cervicalgia, thoracic or lumbrosacral neuritis, and brachial neuritis or radiculitis. *Id.* Dr. Patel prescribed Percocet and scheduled Wright for imaging tests. *Id.*

Later that month, Wright returned to Dr. Artis noting no change in his symptoms. *Id*. at 362–63. He continued Wright's medications. *Id*. Several days later, Wright returned to Dr. Patel reporting continued neck, back, and knee pain, and Dr. Patel again prescribed Percocet. *Id*. at 427–32.

In July 2014, Wright presented to Rural Health Group complaining of little interest in activities, feeling depressed, trouble sleeping, poor energy, poor appetite, and difficulty concentrating. *Id*. at 264–69. Dr. Gilberto Navarro noted that Wright appeared depressed and referred him to a psychiatrist. *Id*. That same month, Wright again saw Dr. Patel and noted no change in his condition. *Id*. at 421–26. Wright estimated his pain was four out of ten with medication, and ten out of ten without medication. *Id*. Dr. Patel continued Wright's prescription for Percocet. *Id*.

Wright again sought pain medications by visiting Emergency Departments in August and September. *Id*. at 440–67. When his request for opioids was denied, Wright became agitated and requiring hospital staff to call the police. *Id*. Despite allegations that he required a wheelchair for his pain, staff observed Wright ambulating outside of the hospital without difficulty. *Id.*

Stacie Chichester, a licensed clinical social worker at C&M Behavioral Health, evaluated Wright in September 2014. *Id*. at 439. She discussed his diagnoses of schizoaffective disorder, PTSD, and generalized anxiety disorder. *Id*. He returned to C&M behavioral Health later that month and reported compliance with his medication regiment. *Id*. at 487–88. That same month, Wright again saw Dr. Patel for sensations of stabbing, burning, and pins and needles in his neck, back, and knee. *Id*. at 418–20. Dr. Patel prescribed medications. *Id*. In November, Wright returned to C&M Behavioral Health to improve his anger management and develop appropriate coping skills. *Id*. at 485–86.

### D. Does Wright Meet or Equal a Listed Impairment?

Wright contends that ALJ Perlowski erred by failing to find that his impairments met the criteria for Listings 12.04 (affective disorders).³ The Commissioner maintains that Wright's impairments failed to meet the Listing's criteria. The court finds that Wright has failed to establish that he meets the criteria of Listing 12.04.

#### 1. Overview of Listing of Impairments

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, *id.* § 416.925(c)(3), or are medically equivalent to a listing, *id.* § 416.926, the claimant is considered disabled, *id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (stating that the Listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493

---

³ Although not at issue in this case, for claims decided on or after January 17, 2017, this Listing now refers to depressive, bipolar, and related disorders.

U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria. *Id.* § 416.925(d); *see also Mecimore v. Astrue*, No. 5:10–CV–64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

### 2. Listing 12.04

ALJ Perlowski did not evaluate Wright's impairments under Listing 12.04 (affective disorder). However, he found that Wright's impairments did not meet or medically equal Listings 12.03 (schizophrenic, paranoid and other psychotic disorders:), 12.06 (anxiety-related disorders), or 12.09 (substance addiction disorders).[4] Tr. at 16–20. In making this finding, ALJ Perlowski concluded that Wright did not meet the Paragraph B criteria or the Paragraph C criteria of either Listing. *Id*. A claimant meets or medically equals Listing 12.04 if he exhibits the criteria in Paragraph A and additionally establishes either Paragraph B criteria or the Paragraph C criteria. 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04.[5]

#### a. Paragraph B Criteria

The Paragraph B criteria for Listing 12.04 require a claimant to have at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social function; (3) marked difficulties in maintaining concentration, persistence, or

---

[4] Similarly, these Listing now refer to schizophrenia spectrum and other psychotic disorders (12.03) and anxiety and obsessive-compulsive disorders (12.06). Additionally, Listing 12.09 has been removed.

[5] Because he did not address this specific Listing, ALJ Perlowski did not discuss whether Wright's impairments satisfied its Paragraph A criteria. The record could support a finding that Wright meets the Paragraph A as there is evidence that he has a depressive disorder with depressed mood, diminished interest in activities, sleep disturbances, difficulty concentrating, thoughts of suicide, poor appetite, and poor energy. Accordingly, for purposes of this argument, the court will assume Wright can satisfy Paragraph A of Listing 12.04.

9

pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04. Episodes of decompensation "may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* § 12.00(C)(4). They may also "be inferred from the medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system ...; or other relevant information ... about the existence, severity, and duration of the episode." *Id*. An episode of decompensation is of extended duration when it lasts for at least two weeks. *Id*. In this context, "repeated episodes" has been interpreted as occurring three times a year, or an average of once every four months. *Id.*

ALJ Perlowski concluded that Wright had mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. Tr. at 19. In so finding, ALJ Perlowski noted that Wright was able to prepare meals, clean clothes, walk to the bus stop, and handle money. *Id*. While Wright had a history of irritability and anger, he denied mood swings and was pleasant and cooperative when compliant with his medication regiment. *Id*. Wright reported poor concentration but this improved when he took his medication. *Id*. ALJ Perlowski concluded that while Wright displayed some difficulty in the area, he could sustain attention and concentration to complete tasks in a work setting. *Id*.

ALJ Perlowski also found that Wright had no extended episodes of decompensation. *Id*. Although Wright had a hospital admission for safety reasons after experiencing a reaction to his medication, it was a two-day stay, which falls short of the two weeks required to qualify as an "extended duration" for an episode of decompensation. ALJ Perlowski also noted that there were no records supporting Wright's reports that he was committed to another hospital in the past. *Id*.

Wright asserts that the evidence supports a finding that he meets the Paragraph B criteria. He points out that Chichester, his therapist, offered a statement on his reported limitations. After two therapy sessions, she noted that Wright was unable to focus on tasks, he experiences moods swings and has poor socialization skills, he has been unable to maintain employment, and he relied on his mother to support him in all areas. *Id*. at 481–84. She opined that Wright would have moderated limitations in understanding, remembering, and carrying out simple instructions, marked limitations in understanding, remembering, and carrying out complex instructions, and marked limitations interacting with others. *Id*.

Wright contends that this statement supports a finding that he has marked limitations in social functioning and maintaining concentration, persistence, or pace. Although Chichester, a social worker, is not considered an "acceptable medical source," Wright submits that other sources may provide insight into impairment severity and its effects on functioning.

The Regulations require an ALJ to consider all medical evidence, regardless of its source. 20 C.F.R. § 404.1513; SSR 06–39 at *4 (the regulations require an ALJ to consider evidence, including opinions, from "other sources."). While providers such as Dawson, a licensed clinical social worker, are not considered "acceptable medical sources," the Regulations advise that evidence from "other sources," including social workers, may be used to show impairment severity and its impact on an ability to work. *Id.* at § 1513(d); SSR 06–3p, 2006 WL 2329939, at *3 (noting that opinions from health care providers who are not acceptable medical sources, including licensed clinical social workers, "are important and should be evaluated on key issues such as impairment severity and functional effects").

ALJ Perlowski considered Chichester's statement. Tr. at 17–18. He noted that she was not an acceptable medical source and thus her "opinion, standing alone, cannot constitute

11

documentation of severe or disabling vocational limitations." *Id*. Nonetheless, ALJ Perlowski considered Chichester's statement as to the severity and effect on function Wright's conditions presented. *Id*. at 18. ALJ Perlowski noted that while Wright had a history of arguing with others, his behavior stabilized when he took his medications. *Id*. He therefore accorded little weight to Chichester's assessment on Wright's social functioning. *Id*.

ALJ Perlowski gave some weight to Chichester's assessment that Wright was moderately limited in understanding, remembering, and carrying out simple instructions. *Id*. He acknowledged that Wright's memory and concentration were limited but determined that this finding was unsupported by the evidence. *Id*. ALJ Perlowski gave great weight to Chichester's assessment that Wright was moderately limited in understanding, remembering, and carrying out complex instructions. *Id*.

In sum, ALJ Perlowski offered proper reasons to afford little weight to the opinions of this provider. As Wright has only show disagreement, not error, with ALJ Perlowski's consideration of Chichester's statement, his argument on this issue lacks merit. *See Johnson*, 434 F.3d at 653 (reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

Additional evidence supports ALJ Perlowski's conclusions that Wright had only mild restrictions in activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace. Dr. Artis, a member of the same health care practice as Chichester, offered an assessment contemporaneous to her statement. Tr. at 436–38. Dr. Artis noted Wright's normal mental status exam and normal findings in his speech, orientation, thought processes, memory, and attention and concentration. *Id*.

Multiple treatment reports, including Wright's own statements to providers, reflect that Wright experienced improvement in his symptoms when he followed his treatment regimen. His condition deteriorated during periods of non-compliance. Symptoms that can be reasonably controlled with medication are not disabling. *Gross v. Heckler*, 785 F.2d 1163, 1165–66 (4th Cir. 1986). ALJ Perlowski thus concluded that several of Wright's symptoms improved when he was compliant with his medication regiment. Tr. at 23. Treatment records also note Wright failed to attend several appointments and was dismissed from care for non-compliance, both of which may suggest that his symptoms are not as disabling as he alleges. *See Dunn v. Colvin*, 607 F. App'x. 264, 275–76 (4th Cir. 2015) (noncompliance with a treatment regimen can indicate a claimant's lack of credibility as to the severity of the alleged symptoms). Accordingly, he concluded that Wright's mental impairments were not disabling and did not qualify as such under the Listings.

In sum, substantial evidence supports ALJ Perlowski's determination that Wright has no more than mild limitations in activities of daily living and no more than moderate difficulties in in social functioning or maintaining concentration, persistence, or pace. Nor is there any evidence supporting a finding that Wright has experienced repeated episodes of extended decompensation. As Wright failed to demonstrate he is more severely limited in these functional areas, ALJ Perlowski did not err by concluding that he did not meet the Paragraph B criteria for 12.00 Listings. As such, Wright's argument on this issue lacks merit.

### b. Paragraph C Criteria

In order to meet the Paragraph C criteria for Listing 12.04, the claimant must have a "[m]edically documented history of a chronic affective disorder of at least [two] years' duration that has caused more than a minimal limitation of ability to do basic work activities, with

symptoms or signs currently attenuated by medication or psychosocial support," along with either (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04.

ALJ Perlowski concluded that Wright did not satisfy the Paragraph C criteria for Listings 12.03, 12.06, or 12.09. Tr. at 19–20. This conclusion is supported by substantial evidence in the record. As already explained, there is no evidence showing that Wright experienced repeated episodes of decompensation, each of extended duration. Similarly, there is no evidence showing that Knight is incapable of functioning outside of his home, that he requires a highly supportive living arrangement, or that he has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate. As ALJ Perlowski noted, Wright is capable of caring for his own needs, including cooking, cleaning, washing his clothes, walk to the bus stop, shop, handle money, and watch television. *Id.* at 17. Wright has taken trips to Texas and out of the country, which ALJ Perlowski found suggested he is able to function independently. *Id.* at 23. Accordingly, ALJ Williams did not err when he concluded that Knight did not meet or medically equal any of the Paragraph C criteria of the 12.00 Listings.

14

### E. Residual Functional Capacity

Wright also contends that ALJ Perlowski erred in finding that he had the RFC to perform a reduced range of medium work. The Commissioner asserts, and the court concludes, that substantial evidence supports ALJ Perlowski's RFC determination.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id*. §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

Wright contends he is unable to preform the demands on unskilled work, which generally requires a person to understand, remember, and carry out simple instructions, making simple work-related decisions, respond appropriately to others, and to deal with changes in a routine work setting. He argues that the evidence establishes that he has difficulty dealing with changes, he is unable to respond appropriately to others, he cannot perform simple tasks, and he has difficulty responding to work stress, interruptions, and changes in work routine. He also asserts that ALJ Perlowski's credibility finding is flawed because it fails to offer reasons for finding Wright less than fully credible. Wright maintains that he is unable to focus, has trouble getting

along with others, has been unable to stay employed, and he experiences mood swings and panic attacks, all of which preclude him from performing any work.

As the Commissioner points out, however, ALJ Perlowski thoroughly discussed the evidence and how it supported his RFC determination. ALJ Perlowski credited some of Wright's limitations, as reflected in the RFC that restricted him to simple, routine, repetitive tasks; avoidance of production work or similar fast-paced jobs with deadlines and quotas; limited his reaching; and limited his interactions with others. Tr. at 20.

Wright has not established that evidence warranted additional limitations. Despite Wright's claims that he could not function independently, ALJ Perlowski noted that he took trips both out of the state and out of the country. Wright performed a wide range of activities of daily living, including cooking, cleaning, walking to the bus stop, handling finances, attending school, and watching television, which belie his claims of disability symptoms. Additionally, Wright worked sporadically both prior to and after his alleged disability onset date, suggesting that his impairments were not the cause of his inconsistent work history nor were they a barrier to his ability to work.

ALJ Perlowski also observed that Wright had failed to adhere to his treatment plans by failing to attend appointments, failing to take medications as directed, and allegedly selling his medication. He noted that although Wright experienced periods of improvement and deterioration, the evidence suggested that these stations tracked Wright's compliance or non-compliance with prescribed treatment. ALJ Perlowski also noted generally normal exam findings, conservative treatment modalities, and that imaging studies yielded no more than mild findings.

Given this evidence, ALJ Perlowski had reasonable grounds to find that Wright was not fully credible in his allegations of disabling impairments. Moreover, ALJ Perlowski concluded that the evidence demonstrated that both Wright's social functioning and his ability to to sustain focus and attention improved with medication. Accordingly, his abilities in these functional areas are not as restricted as he alleges.

In sum, Wright has failed to support his claims that he is more-restricted than ALJ Perlowski found in the RFC determination. Wright's testimony and statements to providers, his treatment records, and the medical opinion evidence support ALJ Perlowski's RFC determination. As such, Wright's argument on this issue lacks merit.

## III.  Conclusion

For the forgoing reasons, undersigned recommends that the court deny Wright's Motion to Reverse the Decision of the Commissioner (D.E. 18), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 21), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: June 7, 2017.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE